1
2
3
4
5                        UNITED STATES DISTRICT COURT
6                             DISTRICT OF NEVADA
7                                    * * *

8    ANTHONY BAILEY #00683227, et al.,          Case No. 2:12-CV-1954 JCM (CWH)

9                              Plaintiff(s),                  ORDER

10              v.

11   CLARK COUNTY, NEVADA, et al.,

12                             Defendant(s).

13

14          Presently before the court are Magistrate Judge Hoffman's report and recommendation.

15   (Doc. # 103).  Plaintiff Gabriel Yates filed an objection to the report and recommendation.  (Doc.

16   # 104).

17          Also before the court is defendants Capt. Rich Suey, Lt. Flippo, Lt. Kelso, and Lt.

18   Aspiazu's motion for summary judgment.  (Doc. # 125).  Plaintiff Anthony Bailey filed a response,

19   (doc. # 129), and defendants filed a reply, (doc. # 132).

20          Also before the court are defendants first and second motions for partial summary

21   judgment.  (Docs. ## 105, 108).  Plaintiffs Anthony Bailey and John Scott filed responses to

22   defendants' first motion for summary judgment, (docs. ## 115, 116), and defendants filed a reply,

23   (doc. # 118).[1]

24

25   _____

26   [1] Defendants have filed a motion for summary judgment and two motions for partial
     summary judgment.  However, the two motions for partial summary judgment are identical (one
27   with respect to claims by plaintiff John Scott, the other with respect to claims by plaintiff Anthony
     Bailey).  As plaintiff Anthony Bailey filed the complaint on behalf of plaintiff John Scott, these
28   two motions for partial summary judgment are analyzed together in one section. Furthermore,
     defendants' motion for summary judgment is, in effect, a partial motion for summary judgment.
     This is discussed further in footnote 6 and accompanying text.

James C. Mahan
U.S. District Judge

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**

## I.      Background

Plaintiffs Anthony Bailey, John Scott, Norman Belcher, and Gabriel Yates are *pro se* pre-trial detainees incarcerated at the Clark County Detention Center ("CCDC").  Defendants are four individual Las Vegas Metropolitan Police Department ("LVMPD") detention services division officers.

On January 18, 2012, plaintiff Bailey filed a complaint in the Eighth Judicial District Court, Las Vegas, Nevada against the four officers in both their individual and official capacities under 42 U.S.C. § 1983.[2]  Bailey filed the suit on behalf of himself and three other prisoners: John Scott, Norman Belcher, and Gabriel Yates.  Plaintiffs' primary complaints are with regards to the lack of access to direct sunlight and air quality within the CCDC.  Plaintiffs allege that defendants' denied plaintiffs' access to "outdoor daily fresh air [and] proper ventilation" beginning on or around February 12, 2012, and lasting an unspecified period of time.  (Doc. # 1).

Defendants removed this action on November 13, 2012.  (Doc. # 1).  On November 26, 2012, defendants filed their answer to plaintiffs' complaint.  (Doc. # 6).  In its screening order the magistrate judge determined that plaintiffs had adequately alleged claims under the Eighth or Fourteenth Amendment[3] for the alleged deprivation of outdoor exercise and proper ventilation within the jail facility.  (*See* doc. # 14).  The court dismissed all other claims.  Shortly thereafter, plaintiff Anthony Bailey filed a motion for class certification.  (Doc. # 25).  The court denied Bailey's motion for class certification.  (*See* doc. # 40).  The court noted that plaintiff Anthony Bailey (1) had no authority to represent anyone other than himself, (2) was not an adequate class representative, and (3) had been previously warned by the Ninth Circuit about his vexatious litigation tactics.  (*See id.*).

_____

[2] Defendants assert that plaintiff's filing of four suits against the officers in their official capacities is the legal functional equivalent of filing suit against the LVMPD itself four times.  *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (holding a suit under § 1983 against an officer in his official capacity is another way of pleading an action against the entity of which the officer is an agent).

[3] The Eighth Amendment applies only after a formal adjudication of guilt is secured. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983). However, the Fourteenth Amendment applies to pre-trial detainees. *Id.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Prior to the order on class certification, defendants filed a motion to enforce the payment of filing fees on plaintiffs Scott, Belcher, and Yates.  (Doc. # 33).  The motion was unopposed and, therefore, granted.  (Doc. # 66).  As a result, the court ordered plaintiffs Scott, Belcher, and Yates to show cause as to why they should not have to pay the court's filing fee or submit individual *in forma pauperis* petitions.  The court specifically warned plaintiffs that failure to submit a show cause brief would result in the recommendation by the magistrate judge that their claims be dismissed.  After a modest extension of time for plaintiffs to file, only plaintiff John Scott filed his motion/application to proceed *in forma pauperis*.  (Doc. # 74).  The magistrate judge granted plaintiff John Scott's motion.  (Doc. # 103).

Neither plaintiff Belcher nor plaintiff Yates complied with the court order to submit their required separate applications to proceed *in forma pauperis*.  *See Lewis v. Nevada*, No. 3:13-cv-00312-MMD-WGC, 2014 WL 65799, *2 (D. Nev. Jan. 7, 2014) (the statutory requirement of full payment of filing fees remains applicable and requires each prisoner to pay the filing fee when multiple prisoners seek to join as co-plaintiffs in a single action).  Additionally, neither plaintiff Belcher nor plaintiff Yates complied with the court's order to show cause as to why the requirement to pay the filing fee or to submit an application to proceed *in forma pauperis* should not apply to them.  Accordingly, the magistrate judge recommended that the claims brought by plaintiffs Belcher and Yates be dismissed.

## II.    Discussion

As an initial matter, the court acknowledges that the complaint was filed *pro se* and is therefore held to less stringent standards.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotations and citations omitted).  However, "*pro se* litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record."  *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir.1986).

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 3 -

1

2       A.  *Magistrate judge's report and recommendation*

3       The magistrate judge recommends that the court dismiss the claims asserted by plaintiffs

4   Belcher and Yates.  Plaintiff Yates filed an objection stating that he intends to appeal the court's

5   decision to dismiss him from the action on the grounds that he never received proper notification

6   from the court that reapplication was necessary.[4]  According to plaintiff Yates, he had been granted

7   *in forma pauperis* status for this case in state court prior to the action being removed to federal

8   court by the defendants and did not realize that it would not transfer.  Plaintiff Yates also asserts

9   that defendants and the CCDC will not allow him to send any legal documents to the other

10  plaintiffs to inquire as to their activity in the instant case due to "safety concerns."

11          1.  *Legal standard*

12      This court "may accept, reject, or modify, in whole or in part, the findings or

13  recommendations made by the magistrate."  28 U.S.C. § 636(b)(1).  Where a party timely objects

14  to a magistrate judge's report and recommendation, then the court is required to "make a *de novo*

15  determination of those portions of the [report and recommendation] to which objection is made."

16  28 U.S.C. § 636(b)(1).

17          2.  *Analysis*

18      The broad, underlying purpose of the Federal Rules of Civil Procedure is to "secure the

19  just, speedy, and inexpensive determination of every action and proceeding."  *See* Fed. R. Civ. P.

20  1.  The rules provide several mechanisms to help courts accomplish this goal through the use of

21  sanctions against a party that fails to comply with the rules or unnecessarily multiplies the

22  proceedings.  Rule 16 authorizes courts to manage cases "so that disposition is expedited, wasteful

23  pretrial activities are discouraged, the quality of the trial is improved, and settlement is facilitated."

24  *In re Phynylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006).

25  . . .

26  . . .

27

28  ───────────────────
        [4]  The court notes that the magistrate judge's report and recommendation merely
    recommended plaintiff Yates' complaint be dismissed.  This court's order will determine whether
    that report and recommendation is granted or not.

**James C. Mahan**
**U.S. District Judge**

1

2          Subsection (f) gives teeth to these objectives by granting the judge authority to impose
sanctions for a party's failure to obey a scheduling or pretrial order, including dismissal. *Id.* Rule
3
16(f) specifically provides that "[o]n motion or on its own, the court may issue any just orders,
4
including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney: (A) fails to
5
appear at a scheduling or pretrial conference; (B) is substantially unprepared to participate–or does
6
not participate in good faith–in the conference; or (C) fails to obey a scheduling order or other
7
pretrial order." Potential sanctions under Rule 37(b)(2)(A)(ii)-(vii) include dismissal. *See* Fed. R.
8
Civ. P. 37(b)(2)(A)(v).
9
          Dismissal for failure to obey a court order is a harsh penalty and should only be imposed
10
in extreme circumstances. *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987). Courts
11
weigh the following five factors when determining whether to dismiss a case for failing to comply
12
with a court order: "(1) the public's interest in expeditious resolution of litigation; (2) the court's
13
need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring
14
disposition of cases on their merits; and (5) the availability of less drastic sanctions." *In re*
15
*Phynylpropanolamine*, 460 F.3d at 1226 (internal citations and quotations omitted).
16
          "These factors are not a series of conditions precedent before the judge can do anything,
17
but a way for the district judge to think about what to do." *Id.* (citing *Valley Eng'rs v. Elec. Eng'g*
18
*Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998). Although preferred, it is not required that the district
19
court make explicit findings to show that it has considered these factors. Id. A dismissal sanction
20
will only be overturned if the reviewing court is left with "a definite and firm conviction that it
21
was clearly outside the acceptable range of sanctions." *Id.* (internal citations and quotations
22
omitted).
23
                              a)   *The public interest*
24
          The Ninth Circuit has consistently held that "the public's interest in expeditious resolution
25
of litigation always favors dismissal." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002)
26
(quoting *Yourish v. California Amplifier,* 191 F.3d 983, 990 (9th Cir. 1999). In this case, plaintiffs
27
Belcher and Yates have failed to file anything in response to the court's order. Plaintiffs have not
28
only failed to file their own motions to proceed *in forma pauperis*, but they have also failed to file

any requests for extensions, or reasons as to why they should not have to submit applications to proceed *in forma pauperis*.  This factor weighs in favor of dismissal.

### b) The court's need to manage its docket

The court's inherent power to control its docket includes the ability to issue sanctions of dismissal where appropriate.  *Thompson v. Housing Authority of Los Angeles*, 782 F.2d 829, 831 (9th Cir 1986) (citation omitted).  Plaintiffs have been given every opportunity to proceed in this matter, including significant time to respond to the court's orders. Plaintiffs have failed to participate, which has made it difficult for this case to move forward and for the court to effectively manage its docket.  This factor weighs in favor of dismissal.

### c) Risk of prejudice to the defendant

The Ninth Circuit recognizes that the risk of prejudice must be considered in reference to "the plaintiff's reason for defaulting."  *Pagtalunan*, 291 F.3d at 642.  However in this matter, plaintiffs have not offered any explanation for their failures to comply with the court's orders.  Their failures to meaningfully participate or satisfy the threshold obligation to proceed under 28 U.S.C. § 1915 for approximately three years is prejudicial to defendants.  This factor weighs in favor of dismissal.

### d) Public policy favoring disposition on the merits

Public policy and the preference of this court hold that claims should be resolved on their merits whenever possible.  This factor weighs against dismissal.

### e) Availability of less drastic sanctions

Less drastic sanctions would not be effective in this case.  Plaintiffs Belcher and Yates, unlike their co-plaintiff John Scott who requested an extension of time to file, and subsequently filed his motion to proceed *in forma pauperis*, have failed to comply or otherwise acknowledge the court's order.  This matter has been pending for almost three years and plaintiffs have been provided every opportunity to participate and avoid dismissal.  Plaintiffs were specifically warned that their failure to comply with the court's order would result in a recommendation that they be dismissed as plaintiffs in this matter.  The failure to respond to the order or make any other attempt

James C. Mahan
U.S. District Judge

- 6 -

at participation indicates that plaintiffs have abandoned their claims and have no intention of moving forward. This factor weighs in favor of dismissal.

Four of the five foregoing factors weigh in favor of dismissal. Plaintiff Yates now states that he did not realize that his *in forma pauperis* status, which was granted in state court, needed to be refiled in federal court. *Pro se* litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record. *Jacobson*, 790 F.2d at 1364. Trial courts generally do not intervene to save litigants from their choice of counsel, and a litigant who chooses *himself* as legal representative should be treated no differently. *Id.* at 1364-65. In both cases, the remedy to the party injured by his representative's error is to move to reconsider or to set aside; it is not for the trial court to inject itself into the adversary process on behalf of one class of litigant. *Id.* at 1365.

Plaintiff Yates is not relieved of his obligation to comply with the rules and procedures of this court simply because he has not retained, or cannot afford to retain, an attorney to represent him.[5] *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) ("Pro se litigants must follow the same rules of procedure that govern other litigants."); see also *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure."); Jacobsen v. Filler, 790 F.2d 1362, 1364 (9th Cir. 1986). Plaintiff Yates failed to respond to this court's order. His justification that he did not receive the court's order and was unaware that he needed to file an additional *in forma pauperis* application in federal court after being granted *in forma pauperis* status in state court, is not sufficient to excuse his non-responsiveness.

---

[5] The court notes that plaintiff Yates is no stranger to the federal court system. Plaintiff Yates is a frequent filer, and this court has overseen many of his prior cases. *See, e.g.*, *Yates v. Naphcare, Inc.*, 2:12-cv-01725-JCM-VCF (dismissed by court because plaintiff Yates failed to appropriately amend his complaint despite two 30-day opportunities granted by the court); *Yates v. Naphcare, Inc.*, 2:12-cv-01865-JCM-VCF (dismissed by court under Federal Rule of Civil Procedure 41(a)(2) after receiving untimely notice of voluntary dismissal by plaintiff Yates); *Yates v. Cristalli*, 2:13-cv-00013-APG-PAL (voluntary dismissal by plaintiff Yates).

James C. Mahan
U.S. District Judge

- 7 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Accordingly, the court agrees with the magistrate judge's recommendation to dismiss claims by both plaintiff Belcher and plaintiff Yates, since both plaintiffs have remained largely unresponsive and failed to meet deadlines established by this court's orders.   Only plaintiffs Anthony Bailey and John Scott remain.

     *B.   Defendants' motions for summary judgment and partial summary judgment*

       *1.   Legal standard*

The Federal Rules of Civil Procedure provide for summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed.R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways:  (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323-24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 8 -

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324. At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249-50.

    *2. Analysis*

By adopting the magistrate judge's report and recommendation, the court notes that the only two remaining plaintiffs are John Scott and Anthony Bailey. Defendants' first and second motions for partial summary judgment address all claims brought by plaintiffs John Scott and Anthony Bailey against defendant LVMPD in its official capacity. (Docs. ## 105, 108). Defendants' final motion for summary judgment appears to be a third motion for partial summary judgment addressing all remaining claims by plaintiffs John Scott and Anthony Bailey brought against the four LVMPD officers in their individual capacities. (Doc. # 125). [6]

---

[6] Defendants' motion for summary judgment discusses only plaintiff Bailey by name and otherwise refers to plaintiffs as "plaintiffs" or "both plaintiffs." Though the court will adopt the magistrate judge's report and recommendation to dismiss plaintiffs Yates and Belcher from the case, at the time defendants filed their "motion for summary judgment" there were still four

Plaintiffs were timely provided with the notice required under *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc), *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988). (Docs. ## 106, 126.) Because plaintiff Bailey filed the complaint on behalf of himself and plaintiff Scott, the court will assess defendants' separate motions for partial summary judgment addressing plaintiffs' claims against LVMPD in an official capacity, (docs. ## 105, 108), together. The court will also assess defendants' motion for summary judgment addressing plaintiffs' claims against defendants in an individual capacity.

### a) Plaintiffs' § 1983 individual capacity claims

Plaintiffs' claims deal with the conditions of confinement at the Clark County Detention Center. Plaintiffs assert that defendants individually violated plaintiffs' Eighth and Fourteenth Amendment rights by denying plaintiffs access to daily outdoor air and exercise.

Claims by pretrial detainees are analyzed under the Fourteenth Amendment due process clause, rather than under the Eighth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16 (1979). Because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, however, the court apples the same standards. *See Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing Redman v. Cnty of San Diego,* 942 F.2d 1435, 1441 (9th Cir. 1991)).

To determine whether the conditions of plaintiffs' confinement constituted cruel and unusual punishment, the court must assess whether plaintiffs were deprived of the "minimal civilized measure of life's necessities." *Wilson v. Seiter,* 501 U.S. 294, 304 (1991). If so, a prison official may be held liable if he acted with "deliberate indifference" to a substantial risk of serious

---

plaintiffs involved. The court believes, given its decision to dismiss plaintiffs Yates and Belcher, that defendants' sloppiness has been graced by a "no harm, no foul" situation. Defendants should not have assumed that the court would adopt the magistrate judge's report and recommendation to dismiss plaintiffs Yates and Belcher. Further, outside of defendants' mistake in assuming the court would dismiss plaintiffs Yates and Belcher, defendants also inappropriately titled their third motion for partial summary judgment as a fully case-dispositive "motion for summary judgment." (*See* doc. # 125). Defendant's "motion for summary judgment" addresses only claims by plaintiffs against the individual defendants and does not also address the arguments filed in the prior two motions for partial summary judgment regarding plaintiffs Scott and Bailey's claims against LVMPD as an official entity. Finally, at no point in any of the partial motions for summary judgment do defendants address plaintiffs Belcher or Yates. However, as mentioned previously, because the court will adopt the magistrate judge's report and recommendation to dismiss plaintiffs Belcher and Yates from the instant case, defendants' poor briefing is undeservedly excused.

harm.  Mere negligence is not sufficient to establish liability.  *Farmer v. Brennan,* 511 U.S. 825, 835 (1994).  Rather, the official's conduct must have been "wanton," which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official.  *Wilson,* 501 U.S. at 302–03.

Outdoor exercise has been recognized as one of the basic human necessities protected by the Eighth and Fourteenth Amendments.  *Wilson*, 501 U.S. at 304.  Complete denials of outdoor exercise for an extended period of time constitutes an objectively serious deprivation of constitutionally adequate conditions of confinement.  *See Lopez v. Smith*, 203 F.3d. 1122, 1132-33 (9th Cir. 2000).

A temporary denial of exercise, however, may be constitutionally permissible.  *See May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) ("a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation"); *compare Sakai*, 48 F.3d at 1088 (long-term deprivation of exercise is a denial of a basic human need in violation of the Eighth Amendment); *Spain v. Procunier*, 600 F.2d 189, 199-200 (9th Cir. 1979) (deprivation of outdoor exercise for a "period of years" contravenes the Eighth Amendment).

Plaintiffs allege that defendants showed deliberate indifference to their health and well-being by denying them daily access to the recreation yard.  Defendants assert that plaintiffs cannot demonstrate that the level of access they were given to the recreation yard at any time fell below the constitutional minimum.

Plaintiffs are not, as they claim, constitutionally entitled to daily outdoor access and exercise.  *Compare Norwood v. Vance*, 591 F.3d 1062, 1070 (9th Cir. 2010) (four deprivations of two and four-and-one-half months, totaling more than a year out of a period of less than two years is substantial deprivation) *with May v. Baldwin*, 109 F.3d 557 (9th Cir. 1997) (denial of exercise for 21 days was not substantial deprivation).  Plaintiffs present no evidence of medical effects suffered based on the alleged deprivation.

Further, plaintiffs' complaint is silent regarding the number of times they were given access to the recreation yard on a weekly or monthly basis.  Plaintiffs merely demonstrate that they filed grievances seeking "daily access to outside fresh air, because of congestion from being required

1   to breathe re-constituted air." (Doc. # 1). Plaintiffs have asserted no evidence to suggest that they
2   were denied access to outdoor exercise for a period of time below the constitutional minimum.
3   Accordingly, the court finds that plaintiffs have failed to provide any specific facts above and
4   beyond their conclusory allegations that demonstrate a genuine issue for trial.
5        Lastly, plaintiffs claim that this treatment constituted a violation of NRS 212.010 and NRS
6   212.020. These statutes declare that prisoners are under protection of the law and delineate the
7   punishment for willful inhumanity towards prisoners. These statutes are strictly criminal in nature.
8   The district court has recognized that "criminal statutes cannot be enforced by civil actions."
9   *Mitchell v. Skolnik*, No. 2:09-CV-02377-KJD, 2011 WL 3626598, at *9 (D. Nev. Aug. 11, 2011).
10  Thus, defendants' motion for summary judgment will be granted with respect to these claims.

11              *b) Plaintiffs' § 1983 official capacity claims*
12

13       Plaintiffs assert that defendants, acting in their official capacity, violated their Eighth and
14  Fourteenth Amendment rights by denying them access to outdoor air and exercise. In naming "a
15  government official in his official capacity, the plaintiff[s are] seeking to recover compensatory
16  damages from the government body itself." *Herrera v. Russo*, 106 F. Supp. 2d 1057, 1061 n.2 (D.
17  Nev. 2000). "Naming a government official in his official capacity is the equivalent of naming
18  the government entity itself as the defendant." *Id.*

19       The principal framework governing municipal liability in § 1983 actions was established
20  in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Under *Monell*, municipal liability must be
21  based upon the enforcement of a municipal policy or custom, not upon the mere employment of a
22  constitutional tortfeasor. *Id.* at 691. Therefore, in order for liability to attach, four conditions must
23  be satisfied: "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2)
24  that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the
25  plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional
26  violation." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996).

27       To prevent "municipal liability [from] collaps[ing] into respondeat superior liability,"
28  federal courts must apply "rigorous standards of culpability and causation" in order to "ensure that

**James C. Mahan**
**U.S. District Judge**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the municipality is not held liable solely for the actions of its employees." *Board of County Comm. of Bryan County v. Brown*, 520 U.S. 397, 404 (1997). Thus, a municipality will only be liable when the "execution of the government's policy or custom . . . inflicts the injury." *Monell*, 463 U.S. at 694.

The defendants argue that there is no evidence in the record to sustain any allegation that the LVMPD has enacted, or its employees enforced, a municipal policy or custom to bring about the plaintiffs' claimed constitutional deprivations. Defendants point to the fact that plaintiffs have failed to respond to their requests for admissions, which concern the practices and policies of the LVMPD and the actions of its employees. Therefore, defendants claim that plaintiffs have failed to make a showing sufficient to establish an element essential to their case on which they bear the burden of proof at trial.

Even assuming arguendo that the defendants did violate plaintiffs' constitutional rights in their individual capacities, plaintiffs have failed to establish that such a constitutional deprivation was the result of LVMPD policy. Plaintiffs merely allege that the LVMPD has "constitutionally infirm practices, policies, and procedures," without putting forth any evidence. (*See* doc. #1). Plaintiffs cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. Plaintiffs have failed to produce any evidence that reveals a genuine issue of material fact with regard to a municipal policy. Indeed, in their opposition to the motion, they neglected to address the question entirely.

Furthermore, the court declines to address plaintiffs' claim that defendants conducted written discovery prematurely, and therefore the motion for partial summary judgment is premature. Regardless of whether the court treats plaintiffs as admitting each of the defendants' requests for admissions, plaintiffs have failed to provide any evidence that the LVMPD has a policy, which when executed, may deprive them of their constitutional rights.

. . .

. . .

Finally, the court acknowledges that naming defendants Flippo, Kelso, Suey, and Aspiazu each in his or her official capacity is duplicative, as it has the effect of naming the government

1    entity—in this case, the LVMPD—repeatedly.  The court need not discuss the issue further, as the

2    court will grant the motion for partial summary judgment with respect to each defendant.

3                          *c)  Plaintiffs' respondeat superior claim*

4            A plaintiff may not recover damages pursuant to § 1983 against a municipality on a theory

5    of respondeat superior for the actions of municipality employees.  *Monell*, 436 U.S. at 691.

6    Instead, the municipality may only be held liable for a violation of § 1983 if the offending conduct

7    in question was the result of a governmental policy or custom, "whether made by [the

8    municipality's] lawmakers or by those whose edicts or acts may fairly be said to represent official

9    policy."  *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005).  "Respondeat superior is

10   a theory of holding an employer vicariously liable for the torts of its employee, it is not an

11   independent cause of action."  *Okeke v. Biomat USA, Inc.*, 927 F. Supp. 2d 1021, 1029 (D. Nev.

12   2013) (internal citation omitted).   Thus, its identification as a separate cause of action is

13   inappropriate.  (*See* doc. #1).

14           Plaintiffs simply allege that defendants are liable based on the tortious conduct of LVMPD

15   officers. Plaintiffs do not specifically identify any policy or custom held by LVMPD as the driving

16   force behind the alleged constitutional violations.  Municipalities may not be held liable under §

17   1983 based on the theory of respondeat superior. Therefore, defendants' motion for summary

18   judgment will be granted as to this claim.

19

20                    *d)  Plaintiffs' negligent training and supervision claim*

21           The defendants' motion for summary judgment will also be granted as to the negligent

22   training and supervision claims. NRS 41.032 provides that:

23
        [N]o action may be brought . . . against an . . . officer or employee of the State or
24      any of its agencies or political subdivisions which is: . . . (2) Based upon the
        exercise or performance or the failure to exercise or perform a discretionary
25      function or duty on the part of the State or any of its agencies or political
        subdivisions or of any officer, employee or immune contractor of any of these,
26      whether or not the discretion involved is abused."

27           Under Nevada law, "to fall within the scope of discretionary-act immunity, a decision must

28   (1) involve an element of individual judgment or choice and (2) be based on considerations of

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

social, economic, or political policy." *Martinez v. Maruszczak*, 123 Nev. 433, 446–47 (2007). Nevada law has followed federal jurisprudence with respect to differentiating between true policy decisions and unprotected acts. *Id.* at 446. "[D]ecisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000).

Likewise, the LVMPD unquestionably considers social, economic, and political policies in defining and carrying out its training, disciplinary, and supervisory roles. Such decisions necessarily involve matters of discretion. Thus, even construing the facts in the light most favorable to the plaintiffs, plaintiffs have failed to establish a material issue of fact that needs to be resolved by a trier of fact. Therefore, the defendants' motion for summary judgment will be granted as to this claim.

### e)   *Plaintiffs' failure to intervene claim*

"A claim can be stated under § 1986 only if the complaint contains a valid claim under § 1985." *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1223 (9th Cir. 1990). 42 U.S.C. § 1985 concerns conspiracies to deprive a person or class of persons equal protection under the laws. Plaintiffs have failed to make any claim under § 1985, and thus, the defendants' motion for summary judgment will be granted as to this claim.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Magistrate Judge Hoffman's report and recommendation (doc. # 103), be and the same hereby are, ADOPTED in full. All claims brought by plaintiffs Norman Belcher and Gabriel Yates shall be DISMISSED.

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IT IS FURTHER ORDERED that defendants Flippo, Kelso, Suey, and Aspiazu's motion for summary judgment, (doc. # 125), and motions for partial summary judgment, (docs. ## 105, 108), are GRANTED.  The clerk shall enter judgment accordingly and close the case.

DATED February 5, 2015.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 16 -