UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ANTHONY BAILEY,<br><br>    Plaintiff(s),<br><br>  v.<br><br>RICH SUEY, et al.,<br><br>    Defendant(s). | Case No. 2:12-CV-1954 JCM (CWH)<br><br>ORDER |

Presently before the court is defendants captain Suey, lieutenant Filippo, lieutenant Kelso, and sergeant Aspiazu's motion for summary judgment. (ECF No. 197). Plaintiff Anthony Baily filed a response (ECF No. 198), to which defendants replied (ECF No. 199).

**I. Facts**

On January 18, 2012, plaintiff filed a complaint in the Eighth Judicial District Court, Las Vegas, Nevada, against the four officers in both their individual and official capacities under 42 U.S.C. § 1983. Plaintiff filed the suit on behalf of himself and three other prisoners: John Scott, Norman Belcher, and Gabriel Yates.[1] Plaintiff alleges that defendants' denied plaintiff access to "outdoor daily fresh air [and] proper ventilation" beginning on or around February 12, 2012, and lasting an unspecified period of time. (ECF No. 1).

---

[1] On February 5, 2015, the court issued an order adopting magistrate judge Hoffman's report and recommendation, thereby dismissing claims brought by plaintiffs Norman Belcher and Gabriel Yates. (ECF No. 141). Further, as the court denied plaintiff's motion for class certification, plaintiff currently represents himself only in this action. Further, no other plaintiffs have filed documents with this court since 2015. Therefore, the court will consistently refer to plaintiff in the singular, so as to avoid confusion and afford consistency with the parties' recent filings.

Defendants removed this action on November 13, 2012. *Id.* On November 26, 2012, defendants filed their answer to plaintiff's complaint. (ECF No. 6). In its screening order the magistrate judge determined that plaintiff had adequately alleged claims under the Eighth or Fourteenth Amendment for the alleged deprivation of outdoor exercise and proper ventilation within the jail facility. *See* (ECF No. 14). The court dismissed all other claims. Shortly thereafter, plaintiff Anthony Bailey filed a motion for class certification. (ECF No. 25). The court denied Bailey's motion for class certification. (ECF No. 40). The court noted that plaintiff Anthony Bailey (1) had no authority to represent anyone other than himself, (2) was not an adequate class representative, and (3) had been previously warned by the Ninth Circuit about his vexatious litigation tactics. *See id.*

On February 5, 2015, the court granted summary judgment in favor of defendants as to plaintiff's claim alleging a denial of outdoor exercise. (ECF No. 141). The court held that plaintiff failed to raise a genuine dispute of material fact as to whether defendants denied him outdoor exercise for a period of time longer than that permitted under the Fourteenth Amendment. *Id.* The court's order did not address plaintiff's inadequate ventilation claim. *Id.*

On appeal, the Ninth Circuit affirmed in part and reversed in part. (ECF No. 178). The Ninth Circuit affirmed the court's holding as to plaintiff's outdoor exercise claim. *Id.* As to defendant's inadequate ventilation claim, the court held that plaintiff's declarations that his health suffered because the air filters in the detention center were unclean raised a genuine dispute of material fact as to whether the ventilation system harmed his health. *Id.*

The court declined to affirm summary judgment on the alternative ground of failure to exhaust available administrative remedies. *Id.* The court stated "[o]n remand, the district court may consider whether summary judgment on the inadequate ventilation claim for failure to exhaust is appropriate. If necessary, the district court may receive additional evidence on this issue." *Id.*

**II.     Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a

**James C. Mahan**
**U.S. District Judge**

- 2 -

judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

**James C. Mahan**
**U.S. District Judge**

versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. Discussion

As an initial matter, the court acknowledges that the complaint was filed *pro se* and is therefore held to less stringent standards. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotations and citations omitted). However, "*pro se* litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986).

Defendants advance two alternative grounds for judgment in their favor. (ECF No. 197). First, defendants argue that plaintiff cannot present evidence that he exhausted his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA") prior to filing the instant lawsuit. *Id.* Second, defendants assert that they are entitled to qualified immunity. *Id.*

*a. Failure to exhaust administrative remedies*

Pursuant to the PLRA, inmates must exhaust all available administrative remedies prior to filing "any suit challenging prison conditions," including, but not limited to, suits under § 1983.

*Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *see also* 42 U.S.C. § 1997e(a). "An inmate is required to exhaust only *available* remedies." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (citing *Booth v. Churner*, 532 U.S. 731, 736 (2001); *Brown v. Valoff*, 422 F.3d 926, 936–37 (9th Cir. 2005)). "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Id.* (citation omitted). While the exhaustion requirement is mandatory regardless of the relief sought, the available remedies need not be "plain, speedy, and effective." *See Booth*, 532 U.S. at 741.

Non-exhaustion under 42 U.S.C. § 1997e(a) is an affirmative defense, for which the defendant bears the ultimate burden of proof. *See, e.g.*, *Jones v. Bock*, 549 U.S. 199, (2007); *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). More specifically, "the defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino*, 747 F.3d at 1172. Thereafter, the burden shifts to the prisoner to set forth evidence showing that "there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

   *i.* *Administrative remedies for conditions at CCDC*

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90. Defendant's motion to dismiss contains an exhibit (Exhibit 3) which details the administrative procedures for remedying conditions at the CCDC. (ECF No. 197) (Las Vegas Metropolitan Police Department Detention Services Division Standard Operating Procedures). These administrative procedures serve as the benchmark for determining whether a plaintiff has exhausted available administrative remedies pertaining to a CCDC-related claim.

Corrections officers and floor sergeants attempt to informally resolve the majority of requests and grievances through the informal resolution procedure, detailed at Standard Operating Procedure 14.00.00(I). Any grievance that cannot be resolved informally may be formally filed pursuant to Standard Operating Procedure 14.00.00(II)(A). The receiving officer is responsible for writing the inmate's name, P#, time, and date. Standard Operating Procedure 14.00.00(II)(B). The officer then gives the inmate a pink carbon copy of the request/grievance, signifying

acknowledgement of receipt. *Id.* The officer thereafter attempts to resolve the request/grievance. *Id.*

When an officer cannot resolve a request/grievance, he or she sends the request/grievance up the appropriate chain of command. Standard Operating Procedure 14.00.00(II)(B). Subsection C details the duties of supervising officers, stating that "[e]ach supervisor . . . will annotate every Inmate Request/Grievance Form to indicate that it was reviewed and an attempt was made at resolving the Request/Grievance." Standard Operating Procedure 14.00.00(II)(C). "Inmates may address grievances through the chain of command to get resolution to unresolved grievances." *Id.* "The final step in resolution is the Deputy Chief, DSD." *Id.*

When the appropriate person within the chain of command determines an appropriate course of action, he or she completed and signs the request/grievance form. *Id.* The original form is entered into a grievance tracking program and is then placed in the inmate's file. Standard Operating Procedure 14.00.00(II)(F). A yellow carbon copy is returned to the inmate with the response. *Id.*

      *ii.    Whether plaintiff exhausted his administrative remedies*

In 2014, when plaintiff opposed defendants' original motion for summary judgment, plaintiff attached two request/grievances submitted to officers at CCDC. Plaintiff filed his first request/grievance on February 4, 2014, complaining of "congestion in [plaintiff's] respiratory system due to ongoing requirements of breathing re-constituted air and not being allowed any outside fresh air." (ECF No. 197 at 19). Lieutenant Filippo's notes at the bottom of the form state that staffing levels at CCDC do not allow for the facility to staff a rec yard post. *Id.* The note continues that request/grievances should not be submitted in petition form, and states, "[y]our next level of appeal is the NTB captain." *Id.*

Three days later, plaintiff filed a second grievance/request with captain Suey, alleging that the air filters in the facility were unclean. *Id.* at 21. Plaintiff requested that the staff change the air filters. Captain Suey responded by stating that "the CCDC is and has been ACA Accredited since 1998. Every year a private contractor . . . conduct [sic] an air quality check of our facility and it meets and surpasses all ACA Standards." *Id.*

After the Ninth Circuit remanded this case, plaintiff submitted a request for judicial notice. (ECF No. 179). The request includes a new grievance/request allegedly written prior to the filing of the lawsuit that was directed to deputy chief Donahue. *Id.* at 11. Plaintiff argues that this document, along with the prior-filed grievance/request forms, demonstrates that plaintiff exhausted his administrative remedies prior to filing his lawsuit. (ECF No. 198).

The court holds that plaintiff failed to exhaust available administrative remedies prior to filing suit. Plaintiff asserts that he attempted to give the grievance/request form to Lynn Jolley, who refused to accept the form, thereby forcing plaintiff to send the grievance via "Interdepartmental Mail."[2] As defendants note, "Interdepartmental Mail" is not an approved method of submitting a grievance/request. Instead, detainees must submit request/grievance forms to their attorneys or to corrections officers. Therefore, even assuming plaintiff did attempt to submit the request via "Interdepartmental Mail," this would not qualify towards exhaustion of administrative remedies.[3] Plaintiff does not allege that he otherwise submitted the letter to deputy chief Donahue. Therefore, plaintiff did not exhaust his available administrative remedies.

Defendants present evidence that plaintiff never properly[4] attempted to file the grievance/request form with a corrections officer. Officer Ierome's declaration makes clear that he interacted often with plaintiff regarding legal issues, and was particularly alert when handling one of plaintiff's request/grievances:

---

[2] Plaintiff initially stated that he gave the grievance to an officer without identifying which officer. (ECF No. 179). After defendants filed the instant motion, whereby they attached a shift log of the officer who worked the day shift in Bailey's module, Bailey identified Jolley. (ECF No. 198).

[3] Bailey also suggests that Jolley destroyed Bailey's grievance/request while it was in the Interdepartmental Mail system. Bailey provides no support for this beyond his own affidavit. A self-serving affidavit does not create a genuine issue of material fact. *Dubois v. Ass'n of Apt. Owners*, 453 F.3d 1175, 1180 (9th Cir. 2006).

[4] The word "properly" is important in this context. Plaintiff may be able to raise a dispute of material fact as to whether he attempted to submit *something* to deputy chief Donahue. But plaintiff argues he attempted to send the grievance request form and the attached declaration to deputy chief Donahue via "Interdepartmental Mail," and this was not a proper avenue for submitting such requests. *See* Discussion *supra*. Further, defendant's grievance/request form, discussed more *infra*, suggests that an officer informed defendant on how to properly submit a grievance/request and he refused to follow directions.

James C. Mahan
U.S. District Judge

- 7 -

> 7. I knew Mr. Bailey to be actively involved in various lawsuits or legal matters when he was an inmate in Module 3B . . .
>
> 8. Because of Mr. Bailey's many requests for legal information and apparent inclination to file lawsuits, I made it my practice to be careful with any of his requests. For example, I would always accept his grievances and forward them to the proper person in the chain of command.

(ECF No. 197 at 39). Both officers on duty at the time Bailey allegedly attempted to offer his grievance for forwarding to deputy chief Donahue testified that they do not recall refusing to accept and sign a grievance from Bailey or hearing about another officer refusing to do the same. *See* (ECF No. 197 at 38) (Declaration of Maloa Ierome); (ECF No. 199-1) (Declaration of Lynn Jolley).

Further, the document is not in the plaintiff's inmate file. According to department policy, all inmate request/grievance forms are placed in the inmate's file. The fact that no inmate grievance/request form directed to deputy chief Donahue is in plaintiff's inmate file supports defendants' assertion that plaintiff never properly filed the form.

The litigation history in this case further supports defendants' claim that plaintiff did not properly submit the disputed grievance/request form to deputy chief Donahue prior to filing his complaint. Plaintiff's alleged "Interdepartmental Mail" request/grievance was not submitted to this court until after the case was remanded from the Ninth Circuit. As defendants note in their motion, the document (if authentic) is relevant to his opposition to defendants' motion for summary judgment. Plaintiff demonstrated knowledge of the document's significance when he wrote "S.O.P. 14.00.00 Exhaustion of Admin. Remedies" in the header. The timing of plaintiff's request for judicial notice casts doubt as to the document's authenticity.

In addition, there are irregularities with the grievance/request form allegedly submitted to Deputy Chief Donahue which suggest that defendant never attempted to properly submit a grievance/request to the deputy chief. The request form itself does not detail any grievances (apart from the complaint regarding the grievance process) but instead refers to an attached declaration. (ECF No. 179). The declaration contains the substance of plaintiff's alleged grievance/request. (ECF No. 129). From the text of the grievance/request form, it appears as if plaintiff was told by a corrections officer that submitting an attached declaration was not the appropriate way to file a grievance. (ECF No. 179). Thereafter, he wrote most if not all of this grievance/request form to

explain his refusal to adequately pursue an available administrative remedy. *Id.* Therefore, if taken as true, plaintiff's allegations in his grievance/request form establish that he was not following the proper procedure for filing a grievance request. *Id.*

Further, the structure of the grievance/request form is quite peculiar. After the reference to the declaration, it continues with discussion in the middle paragraph of plaintiff's alleged difficulties obtaining a signature from a corrections officer, and in the next paragraph discusses remedies sought based on the underlying ventilation issues. This structure suggests that the form was not prepared for submittal to deputy chief Donahue in compliance with the CCDC's grievance procedures, but was instead prepared after someone explained to plaintiff how he could properly file a grievance request.

The noted issues with plaintiff's purported grievance/request form highlight defendants' concern that the only evidence plaintiff offers to support that he properly attempted to submit a grievance/request form prior to the filing of this lawsuit is his own unsworn, uncorroborated affidavit. An uncorroborated and self-interested declaration cannot alone create a dispute as to material fact sufficient to withstand a summary judgment motion. *Dubois v. Ass'n of Apt. Owners*, 453 F.3d 1175, 1180 (9th Cir. 2006). Here, given the overwhelming evidence offered by defendants to support their assertion that plaintiff never properly filed a grievance/request for with deputy chief Donahue, plaintiff's self-serving declarations do not create a dispute as to whether he properly filed a grievance/request form with deputy chief Donahue.

In sum, plaintiff never properly appealed his grievance regarding inadequate ventilation to the deputy chief. Plaintiff's own declaration affirms that he did not properly submit the form to deputy chief Donahue prior to filing his complaint in this case, which is fatal to his exhaustion arguments. Further, defendants have raised numerous concerns regarding the authenticity of the grievance/request form that plaintiff fails to adequately address. Therefore, defendants have carried their burden of proving that plaintiff failed to exhaust his administrative remedies, *see Albino*, 747 F.3d at 1172, and plaintiff has not brought forth evidence showing that "there is something in his particular case that made the existing and generally available administrative

remed[y] effectively unavailable to him," *see id.* The court will grant defendants' motion for summary judgment.

    *b. Qualified immunity*

In light of the court's holding as to plaintiff's failure to exhaust administrative remedies, the court will not consider defendants' arguments in the alternative related to qualified immunity.

**IV.**   **Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for summary judgment (ECF No. 197) be, and the same hereby is, GRANTED.

The clerk shall enter judgment accordingly and close the case.

DATED January 11, 2018.

                                                             /s/ James C. Mahan
                                         UNITED STATES DISTRICT JUDGE